## WILLIAM W. TYLER v. THE BLODGETT & DAVIS LUMBER COMPANY.

*Sawing contract—Lien upon products—Waiver.*

A log-owner contracted with a mill-owner for sawing a quantity of logs, and sold 700,000 feet of the lumber, which was paid for, and piled by itself on the dock, and marked by the mill-owner with the initial letters of the vendee's name, who shipped 600,000 feet, and, at the close of the season's sawing, the vendor settled for the balance of the saw-bill by his note, which was accepted by the mill-owner, who is held by these acts to have waived any lien he had upon said lumber; and it is further held that he had no lien upon the lumber so sold for the entire season's sawing.

Error to Menominee. (Grant, J.) Argued November 1, 1889. Decided November 15, 1889.

Replevin. Defendant brings error. Affirmed. The facts are stated in the opinion.

78 MICH.—6.

*Sawyer & Waite,* for appellant, contended

1. The defendant had a right to the possession of the lumber replevied until its saw-bill was paid, unless the lien was discharged or abandoned by agreement, or implication; citing How. Stat. §§ 8399, 8400; and, if this case is not covered by the statute, the lien would attach at common law, of which the statute is declaratory; citing 1 Jones, Liens, § 749; and if such lien may be held against the owner, much more may it be so retained against his vendee, or an attaching creditor; citing Overton, Liens, 47; *Palmer v. Tucker*, 45 Me. 316.

2. If part of the lumber has been delivered to the owner and hauled away, the lien will attach to the part remaining in the possession of the creditor; which lien attaches to every piece as a charge generally for the whole work done; citing Overton, Liens, 48; *Partridge v. College*, 5 N. H. 286; *Mount v. Williams*, 11 Wend. 77; *McFarland v. Wheeler*, 26 Id. 467; *Pierce v. Sweet*, 33 Penn. St. 151; *Chadwick v. Broadwell*, 27 Mich. 13; 1 Jones, Liens, §§ 320, 739, 740, 1001.

3. An intention to waive a lien will not be presumed, in the absence of evidence clearly tending to show such intention; citing 1 Jones, Liens, § 999; *Muench v. Bank*, 11 Mo. App. 144; nor was the lien discharged because the agreement in regard to payment was inconsistent with the existence of a lien; citing *Chadwick v. Broadwell*, 27 Mich. 6, 11; 1 Jones, Liens, § 1002; *Cardinal v. Edwards*, 5 Nev. 36.

*B. J. Brown,* for plaintiff, contended for the doctrine stated in the opinion.

LONG, J.   The facts in this case are stated in the charge of the court, and the ruling of the court upon such facts raises the only question for consideration. The court charged the jury as follows:

"This is an action of replevin, brought to recover the possession of manufactured lumber described in the declaration.   It appears from the evidence in the case that one Baars, Jr., was the owner of a large lot of logs, which were transported to the mill belonging to the defendant, the Doherty & Baars Lumber Company; that the Doherty & Baars Lumber Company agreed to saw these logs up into lumber for Baars, Jr.   It appears, furthermore, that this lumber was sold by Baars, Jr., to

different parties; among them was the plaintiff in this case. It appears from the evidence—there is no dispute to the contrary—that one Mr. Smith, the witness in the case, made the bargain for Mr. Tyler with Baars, Jr., for the purchase of seven hundred thousand feet of this lumber. Mr. Smith remained there to see that the lumber was sawed according to his directions. The lumber was sawed; was piled upon the dock in one pile, evidently according to the estimate made of the amount; it was marked 'W. W. T.,' the initials of the plaintiff in this case. This was done by the defendant, through his agent. Six hundred thousand feet of the lumber was shipped. The other one hundred thousand feet was not shipped, but was left upon the docks. It remained there until the following spring.

"Meanwhile the other lumber of Baars had been sold by him to different parties, and had all been taken away from the possession of the Doherty & Baars Lumber Company. It appears that Baars did not pay the total amount that was due for sawing, but that at the end of the season there was due from him to the defendant something over nine hundred dollars. The defendant refused upon demand, to let this property be taken away, upon the ground that it had a lien upon the property for the sawbill of that season, or the balance due upon it, and that is the question to be decided in this case.

"It is, in my judgment, gentlemen, simply a question of law A bill was rendered by the Doherty & Baars Lumber Company to this J. F. Baars, Jr., dated September 3, 1887. It was a bill for the sawing for that season up to that time. Part of it, evidently, was according to the exact scale, as the lumber was measured when shipped. The balance of it was evidently upon its face, according to the mill scale. That bill shows that it was paid in this way: Received sixty-day note for amount, $3,041.61, which was the balance due upon the bill.

"Now, it is clear that the Doherty & Baars Lumber Company knew that this lumber belonged, or was to belong, to the plaintiff in this case when it was sawed. It was piled up there on the dock, with his mark upon it. The larger portion of it had been shipped. The defendant in the case then sawed up the balance of the Baars logs, and allowed all the rest of the season's cut to be shipped, without enforcing any lien upon the lumber

so manufactured, and claims the right to hold the lumber previously manufactured and set apart there as Tyler's for the price of the sawing after that time.

"It seems to me, gentlemen, clearly, that this is not the law. The defendant or anybody sawing logs can very easily arrange with each of the parties to whom the lumber is shipped or sold for a settlement of the lien; and in my mind it would be unjust, and is not the law, that after this lumber had been set aside as the lumber of Tyler, and marked with his initials, that months afterwards this lumber could be held for a lien for the price of sawing done after that time. Clearly, by accepting the paper, it discharges the lien upon the property, in my judgment, and when a bill is made and receipted it discharges the lien upon the lumber manufactured up to that time. This is not a case where, as between the owner of the lumber and the mill-owner, there is a lien upon the whole season's cut; but it is a case where, with the knowledge of the defendant, this cut has been divided up into separate parcels, part sold to one, part to another. And I hold, gentlemen, that the defendant in the case had discharged its lien upon this lumber under the circumstances of this case, and charge you to find a verdict for the plaintiff, with nominal damages of six cents.

"*Mr. Sawyer.* Before the jury render their verdict, I think the court misunderstood or did not take notice of the whole evidence, and I wish to call the court's attention to it, as the court dwelt upon it in his charge, and that was that the lumber was marked 'W. W. T.' by defendant, or by their agent under their instructions. The evidence in that case was, by Mr. Smith, that lumber is so marked,—is marked for different parties,—for the purpose of identification, and to keep it separate from lumber sawed for other parties,—other people's lumber. It was so testified by Mr. Adams, that lumber is so marked. I merely call the court's attention to it. He says directions for marking it are given sometimes before it is sawed, so it can be marked for identification.

"*Court.* They must know, of course, that that lumber is intended eventually to belong to the party for whom it is marked. That being the case, I do not think it is the law that a mill-owner can let five of these parties,—supposing there were six of them,—let five take the lumber

marked, and then hold a lien for the whole on the balance. It is very easy for the mill-owner to insist upon his lien upon all the parties, under those circumstances, in my judgment."

The only errors assigned are that the court erred in holding that the defendant discharged its lien under the circumstances, and that the court erred in admitting in evidence plaintiff's Exhibits A and B. Exhibit A is a statement of account rendered by defendant to J. F. Baars, Jr., showing a balance due on saw-bill of $3,041.61, and receipt for Mr. Baars' note at 60 days for such balance, and Exhibit B, a letter from the attorneys of the defendant to plaintiff, dated July 30, 1888, making claim to hold the unshipped lumber for the saw-bill, amounting to $971.27, with interest from October 1, 1887. There was no error in admitting these in evidence, and the court was not in error in holding that, under the facts shown, plaintiff was entitled to a verdict. The lumber was sawed and piled out in a separate pile by defendant for the plaintiff, and marked by defendant with plaintiff's initials. Plaintiff paid in full for the lumber to Baars, and it appears that defendant settled with Baars for the saw-bill by taking his note for the balance. If the defendant had a lien upon the lumber for its saw-bill, it must be held to have waived it, by piling this lumber apart, marking it with the initials of the plaintiff, and taking the note of Baars for its bill.

Plaintiff acted in good faith in the purchase, and paid in full for the lumber set apart for him. Under these circumstances, it cannot be held that defendant had a lien upon this portion for the sawing of the whole of the logs put into the mill by Baars. The defendant knew of and assented to the sale of the lumber to plaintiff when it set it apart and marked it to him. It was expected that it would all be shipped in the fall of 1887, and no

objection was made to this shipment.    Plaintiff lost no·
rights by leaving a portion of it over until the following
March, and it was not until July following that defend-
ant claimed any lien.    We think the circuit court was
correct in the charge that under the circumstances the·
plaintiff was entitled to the lumber.

The judgment must be affirmed, with costs.

The other Justices concurred.